Chancellor Desqussure.
The first question which was made was, what effect the sale of the real estate, by the testator in his life.time, had on the device thereof to his brother John; on this subject there can be no controversy. It has been solemn-, ly settled that a sale of land, after a devise and before the death of the testator, is a revocation of the devise; and the money due on the sale thereof becomes personal estate, and is distributed or passes under the residuary clause, according to the facts of the case. See 3 Eq. Rep. 346, Cogdell’s case. This point was candidly given up by the counsel for defendant.
The second question is, whether a negro child, born after the making the will and before the death of the testator, would pass with the mother to the legatee. This point has been decided on solemn argument. See the case of Gayle, and others, vs. Cunningham, and others, decided in the court of appeals at Columbia, December, 1819, as well as the preceding case of Ellis & Shell, 4 Eq. Rep. By these cases it is established that the issue of female slaves bequeathed, born after making the will and before the death of the testator, do pass with their mothers to the legatees, unless there be evidence apparent on the face of the will, of a contrary intention. There is no evidence of such intention in this case. The testator seems to desire that the children should go with their mother.
The third question relates to the election in the case stated in the will, which is in these words: “to my niece, Susannah. Cox Porter, I give and bequeath the four following negroes, Barbara and her three children, Jacob, Andrew and Solomon; or in lieu thereof one thousand dollars, as my brother might think best.”
It is contended for the brother of the testator, who was sole executor, that he has an absolute right to make an election between the slaves and the money, and to pay the legatee the $1000, instead of the slaves. But the legatee claims the slaves.
This is a nice and delicate question. The authority to deliver the slaves, or to pay a thousand dollars, seems to give the election wholly to the executor. But the expression is, “as lie might think best.” Now the question arises* ‘best, for *119 whom?’ It must be best for. some person, and the only per» son in tbe contemplation of the bounty of the testator in this clause is the female legatee, his neice. For the testator does not, on the election either of the slaves or money, give the other article to his brother the executor. The money is not to be paid by the executor out of his own pocket, but out of the estate; for it is a legacy from the testator, and to come out of his estate. It can hardly be supposed that the testator meant, by the expression, “as bis brother and executor mig’ht think best,” that the election should be made as -might be most profitable or beneficial to his estate, for he was in the act of giving that away.
It does appear to me therefore, to be the reasonable con - struction, that the testator meant that the executor should exercise this power of electing as might be most beneficial to tbe legatee. For it,was possible that a part or all of the slaves might die before him, and he meant at all events to secure a benefit to tSe legatee, to at least the amount of a thousand dollars.
This view of the case is strengthened by the fact that it is not an implied bounty to the legatee, made by the will to, be almost as dependant on tbe will of the executor as on the testator. But the gift of the slaves is in the first place absolute; then follows a qualification. Now reason and the decided cases say, that express bequests are not to be controlled or too much altered by inference from subsequent clauses or provisions, 1 Ves. jun. 269; 8 Ves. 42.
' This reasonable construction seems -also to be in accordance with a rule of equity, which has long prevailed and is of considerable extent and application. It is, that where the power of electing is given to a trustee, as to the rights of a third ■person, .the trustee is bound to exercise that power most beneficially for the cestui qui use. Now an executor invested with such a power, is a trustee for the legatee, and is bound to follow this rule of equity; and he shall not exercise it illusorily, (a)
*120 This principle is illustrated by many decided cases winds are familiar. See 5 Ves. 848, Kemp, vs. Kemp; 16 Ves. 15. Bax, vs. Whitbread; 11 Ves. 479, M'Queen, vs. Farquhar.
*121 (lipón the whole, I am of opinion that the executor, in snaking the election under this will, is bound to exercise it for the best interests of the legatee; and as the negroes are of more value than the money, he must choose the negroes for the legatee and deliver them to her.
The next question relates to the right of the executor to the §'1000, be ¡ueathed to the neice in the alternative with the slaves. ' This claim was faintly stated, and perhaps not intended to be seriously urged. There are no words in the clause which indicate any intention • that when the executor should exercise the power of electing for the legatee, the other property should become his own; and I cannot supply such words.
We come now to the consideration of the residuary clause of the will. It is in these words: “my household furniture, and whatever property may come to me on the settlement of my mother’s estate, to be disposed of as my executor should seem fit, in regard to the settlement of my just debts, and the over-plus if any there should be, I give to my brother John Cox.”
The defendant insists that this clause is a compete disposition of all the residuary estate of the testator, as well that not disposed of, as of that disposed of, but lapsing into the residuum; *122 and that it comprehends the proceeds of the sale of the real estate, made by the testator in his life time, and also the ne-groes or the f 1000 given in lieu thereof. On a careful examination of the clause in question, I am of a different Opinion. The testator says, my household furniture and what may come, to me on the settlement of my mother’s estate, to be disposed of as my executor thinks fit, in regard to payment of his debts, and the overplus if any, I give to my brother John Cox. What overplus? surely the overplus of the property he had just been speaking of.
Miller, for appellant.
The first question is whether there is a general residuary bequest to the defendant. The presumption is, that he who makes a will intends to dispose of his whole estate. The bequest of the overplus does not relate necessarily to. the immediate antecedent, the household furniture; but by a construction quite as natural, may be taken to refer to the testator’s whole" éstate; and so it ought tobe taken, If we are to presume that he intended to dispose of the whole. The testator’s personal property was then small, though it after-wards became considerable by the sale of his real estate. [The enumeration of minute particulars, descending to household furniture, strengthens the conclusion. In the case oí Ervin, vs. Ervin,- decided in this, court (Record Book, 237, 241,) the court inferred an intention to dispose of the whole estate, from, the enumeration of the particulars.
*122 If the testator intended to make a general residuary bequest to this brother, why not say more simply and in the usual way, ‘I give all the rest and residue of my estate to -my brother John Cox.’ I think it quite clear that the testator meant to give a specified and limited and not a general residuum to his brother. If he meant to do more, he has not expressed his intention.
It is therefore ordered and decreed that the defendant do immediately deliver up to the complainants the negroes in question, and the issue of the females; and also do' account for their hire and labor from the death of the testator; and that he do account and pay over, to complainants their distributive share of the undisposed estate of the testator, including the sales of the land sold by the testator, which has or may here» after come into the hands of the defendant’to be administered.
The defendant appealed on the grounds;- 1st. That the defendant had the right to elect whether he should deliver the complainant the negroes or the thousand dollars:
2d. That by the just construction of the will, he was the residuary legatee of the whole estate:
3d. That the child of the woman Barbara, born after the making of the will, ought not to pass to the legatee.
The decision of this point will bear on that which respects-the right of election. For if the brother was the principal object of testator’s bounty, it affords a reason why the right of election should be given to him; he might take the negroes upon paying $1000, If the alternative had not been-intended for • the executor’s benefit, the natural form of expression would have been £as she thinks best’ ór ‘as may be best for her.’ This is merely a question of intention, and has nothing to do with the doctrine of illusory appointment. If indeed it be taken for granted, that the testator intended the right of election for the benefit of the legatee, there may be ground for arguing that the court .will compel'the executor to exercise it in good faith. But if it was intended that he should exercise it for his own benefit, there can be no ground for the interference of the court-
This case differs from that of Gayle, vs.- - Cunningham, deciding that the issue of a female slave born after the making of a will, pass by a devise of the mother. In this case particular children are enumerated which shall pass; and this excludes the implication that any others were intended.
Haynesworth, contra.
(Confined by the court to the. question of election.-) Every legacy implies a benefit to the legatee; and the alternative must be taken as intended for a benefit, unless the contrary appears — unless the testator seems to have intended to benefit another by the qualification' of his bequest. The words giving the election to the executor are Pot ‘as he may choose,’ but ‘as may seem-best;’“ and'the question recurs, best for whom? and the only answer isr for the object of his bounty. . There is an obvious reason why the election was given to the executor. The legatee was a minor and. incapable of choice. Supposé all the negroes had died before the testator, could the executor elect to give nothing. It may' have been on account of the chance of this, that testator made the provision; intending to secure her $1000, at all events. In the first instance, there is a directbequest of the slaves; the alternative follows; can it be doubted that if the executor had died before making an election, the slaves would have gone to the legatee? The election was a trust incapable of transfer. A trustee is bound to execute his trust in good faith, and not for his own benefit, but that of his cestui qui trust; if he appoints to hvs own benefit, the court will set it aside as illusory. 5 Fes, 504: 11 Fes. 479; 2 Eq. fie. 431.
It was ordered and adjudged that the decree of the circuit court be affirmed, and that a writ of partition do issue to carry tile same into effect.
Chancellors, Waties, Desaussure and James, concurred.
Chancellors, Gaill ¡rd and Thompson, concurred with the circuit court decree, upon all the points in the above case except that of election, on which they disagreed.

 The doctrine of illusory execution of a power of appointment seems to have been always a subject of difficulty and embarrassment. The rule at law is, that if one has the power of appointing a fund among several, itis sufficient *120 if he give ecbh a share, however asnal!. The rule of equity as laid down in several of the cases quoted, is that if one have such power, he shall give cacha substantial sharp — a share not illusory. The idea seems to bo, that as the donor intended a benefit to all the individuals among whom he directed distribution to he made, it shall appear that the person exercising the power gave each an actual, beneficial interest, and did not evasively exclude some, by giving only., «.nominal share. If the execution of the power appears to have been iilusorv,. the court will distribute the fund e quaiiy. What shall be considered this actual, substantial share has never been defined, and some notion can be formed on the subject, only by reference to the adjudged cases. Several judges have expressed themselves dissaiisfied with the rule, and inclined to get rid of it altogether. In the case of Butcher, vS. Butcher, 9 Ves. 381, as also in Bax, vs. Whitbread, 10 Ves. 31, the master of the rolls, after speaking of the difficulty arising from the indefiniteness of the rule, says he will go so far as the adjudged' cases have gone anc! no further. He does not explain however, whether in following the decided cases, he will regard the positive amount given, or the proportion of the fund. On appeal, lord Eldon acknowledges the difficulty, bur says that as the rule is perfectly well established; the court must determine as well as it can, according to the circumstances.of every ease.
In the case of Spencer, vs. Spencer, 5 Ves. 362; there was n power to appoint a fund of about £1,600 among six; the power was executed by giving £G to one, £S to another, and £10 to a third; tho residue equally divided between the three remaining appointees. This ivas held -illusory.
In Kemp, vs. Kemp, 5 Ves 848, the giving £10 to one, £50 to another and the residue to a third, of a fund of £1,900, was held to be iliusory.
In Vandrezee, vs. Aclom, 4 Ves. 771, a mother having power to appoint tr fund of £2,491, among her five children, gavo one £10, and this was declared.' illusory.
In Mocado, vs. Lonsada, 12 Ves. 123, £100 was appointed to be divided' between throe daughters, and the residue of a fund of £2,500, to two sons. Held not illusory.
in Dyke, vs. Sylvester, 12 Ves. 126, £5,500 was given to one, £1,100 to another, and £500 to a third. Not illusory.
In Bax, vs. Whitbread, the master of the rolls decided that the giving of £100 to one son and £2,400 to another was not an illusory execution of apower of appointment by a mother. The chancellor on appeal, (10 Ves. 15,) affirmed-the decree; hut on the ground that the son to whom the £100 was given-had been otherwise provided for by his mother.
There seems some difficulty in bringing the case in the text Within the principle of these decisions. The power was to appoint one of two funds, which, the testator seems to have regarded as of about equal value; and it seems as if the giving of either was conferring a substantial benefit, and hardly to be called an illusory execution of the power. If the choice was with the executor, ¡tap- *121 pears difficult to say that it was fraudulent for him to exercise his discretion in a way which the testator intended to authorize. The court seems lo have regarded the bequest as if the words had been “as may be best for her” or “whichever may be the more valuable,” excluding any choice or discretion of the executor.
If the power of appointment be “to one or more” or “to c ild or children,” the apppointment of the whole to one is good. Wollen, vs. Tanner, 5 Ves 218. Kemp, vs. Kemp, 5 Ves. 848.
In M'Queen, vs. Farquhar, 11 Ves. 419, an estate was settled on the husband and wife for life; remainder to such one or more of their children as they should appoint, and in default of appointment to all their children as tenants in common. The father being desirous of selling the estate and having contracted to do so, executed an appointment in favor of hi? eldest son, (having five other children.) The deed of appointment recited that it was made in consequence of a promise and agreement by- the father to and with his said son. The father, mother and son joined in selling. It was argued that from the recital of the promise and agreement, there was ground to believe that the father had derived an advantage to himself from the. execution of the power, which would vitiate the appointment. . The lord chancellor said that a party could not execute a power for his own benefit, hut he could not set aside the appoint-Stent on a suspicion that sach might have been the case.